Jonathan P. McHenry
Neil V. Mody
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 535-0500
Fax: (973) 535-9217

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARTIS PROPERTY CASUALTY COMPANY, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| JOHN INGANAMORT and JOAN INGANAMORT, | |
| Defendants. | |

### COMPLAINT

Plaintiff Chartis Property Casualty Company ("Chartis"), by and through its undersigned attorneys, brings this action against Defendants John Inganamort and Joan Inganamort (collectively, "Inganamort"), and states as follows:

### INTRODUCTION

1.  As set forth in more detail below, Inganamort has sought insurance coverage from Chartis under a marine policy of yacht insurance in connection with the alleged September 15, 2011 partial sinking of a docked private yacht.

2. An actual controversy presently exists between Chartis and Inganamort as to the existence, scope and extent of coverage, if any, available to Inganamort in connection with the alleged September 15, 2011 loss.

3. Accordingly, Chartis brings this action for a declaration of its rights and obligations and/or for rescission in order to fairly and expeditiously address the issues set forth herein.

**PARTIES**

4. Chartis maintains an office where the subject insurance claims are handled in Berkeley Heights, New Jersey. Furthermore, Chartis is a corporate entity organized under the laws of the State of Pennsylvania with its principal place of business in the State of New York.

5. Upon information and belief, Defendants John Inganamort and Joan Inganamort are each natural persons who at all relevant times maintained a principal residence in the State of New Jersey.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, inasmuch as the action concerns a policy of marine insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction.

7. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, inasmuch as the parties are diverse and the alleged sum or value in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold amount.

8. Pursuant to Fed. R. Civ. Pro. 9(h), the claims in this action are designated and brought within the Court's admiralty and maritime jurisdiction.

2732996-02

9. This Court has personal jurisdiction over Inganamort because, upon information and belief, each of these defendants maintain a principal residence in the State of New Jersey.

10. Venue is appropriate in the District of New Jersey pursuant to 28 U.S.C. § 1391(b), inasmuch as a substantial part of the events giving rise to this insurance action, including claims handling and delivery of the Policy, took place in this District.

## FACTUAL ALLEGATIONS

**The Policy**

11. Chartis issued Private Client Group Yacht Insurance policy number PM 134-13-12, effective May 16, 2011 to May 16, 2012, to John and Joan Inganamort (the "Policy"), a copy of which is annexed hereto as **Exhibit "A"**.

12. The Policy was delivered to Inganamort at the address specified in the policy in Fort Lee, New Jersey.

13. The Policy insured a 65-foot, 1996 Sportfish vessel (the "Yacht"). The Yacht was berthed in Boca Raton, Florida, and according to the Policy, had Navigational Limits in and around various jurisdictions, including the State of New Jersey.

**Alleged Loss**

14. On or about September 15, 2011, Inganamort purportedly suffered a loss involving the partial sinking of the Yacht while docked in Boca Raton, Florida.

15. On or about October 14, 2011, Chartis was informed by telephone from Inganamort's insurance agent of the alleged loss.

16. On October 17, 2011, Chartis sent a letter to Inganamort at their New Jersey address acknowledging the alleged loss and expressly reserving all rights under the Policy.

2732996-02

**Post-Loss Investigation**

17. On October 17, 2011, Chartis retained a marine surveyor, Dave Morris, who telephoned Inganamort's designated Yacht captain, Brian Larosiere ("Capt. Larosiere"). Following their telephone discussion, Chartis' marine surveyor sent Capt. Larosiere a letter confirming that it is the insureds' responsibility to mitigate further damage, and to request confirmation that the Yacht was safely afloat and not in danger of additional water ingress.

18. On October 24, 2011, Chartis' marine surveyor conducted a preliminary survey of the Yacht in the presence of Capt. Larosiere.

19. On November 2, 2011, Chartis sent an email to Inganamort enclosing a copy of its marine surveyor's preliminary yacht survey report, a copy of which is annexed hereto as **Exhibit "B"**. Due to the apparent continuing post-loss intrusion of water into the vessel, Chartis requested the vessel to be hauled and agreed to pay for the cost to haul and block the vessel.

**Requests for Records**

20. Since its receipt of the alleged loss, Chartis has made numerous verbal and written requests for Inganamort to provide records and documents, including without limitation, through correspondence sent in on October 17, November 3 and 5, and December 15, 2011, and on January 18, February 13, 15, and 27, March 5, 8, 20, 22, 26, 28, and 30, April 6, 10, and 26, May 2 and 29, and June 21 and 27, 2012.

21. As of the date of filing of this Complaint, Inganamort has yet to provide various categories of information requested by Chartis in connection with its investigation.

**Examinations Under Oath**

22.  Chartis also requested, including by letters dated December 15, 2011 and January 18, 2012, that Inganamort and Capt. Larosiere each appear for an examination under oath ("EUO") in connection with its investigation of the subject loss.

23.  Following several requests and exhanges, Inganamort finally appeared for his EUO on March 6, 2012, and Capt. Larosiere finally appeared for his EUO on April 11, 2012.

**Joint Survey**

24.  Based on the limited information provided concerning the condition of the Yacht, Chartis also requested, including on March 8, April 11, April 26, and May 29, 2012, that the parties conduct a joint survey of the Yacht.

25.  On June 8, 2012, Chartis was finally advised that Inganamort did not intend to participate in a joint survey, but Chartis would be permitted to conduct its own survey of the Yacht.

26.  On June 28, 2012, Chartis' marine surveyor and other retained consulting experts conducted a survey of the Yacht.

**Ongoing Investigation**

27.  As set forth in more detail below, Chartis' investigation indicates, contrary to and/or omitted from representations made prior to the issuance of the Policy, that the Yacht had no full-time paid Captain, was not owned by Inganamort, and has not been in regular use for several years.

28.  Chartis' good faith investigation of the subject loss is ongoing by reason of Inganamort's failure, refusal and/or delay in cooperation. Disputes have arisen, and will likely continue to arise, concerning the existence, scope and extent of coverage, if any, available to

2732996-02

Inganamort in connection with the subject loss. Accordingly, Chartis brings this action for a declaration of its rights and obligations and/or for rescission in order to fairly and expeditiously address the foregoing issues.

## COUNT ONE

## DECLARATORY JUDGMENT

29. Chartis repeats and realleges each of the allegations contained in Paragraphs 1 through 28, including any and all subparts, as through fully set forth herein.

30. The Policy, as set forth in more detail therein, provides coverage for "physical loss or damage to your yacht . . . subject to the Navigational Limits and all policy terms, conditions, and exclusions." *See* Policy, Exhibit A.

31. The Policy contains an express warranty which states in pertinent part that "[i]t is warranted that the yacht will always be under the care and control of an approved, full-time paid Captain. Brian Larosiere is approved as Captain." *See id*.

32. The Policy contains various exclusions, including without limitation, an exclusion for "gradual or sudden loss" which provides that there is no coverage for any loss, damage, claim or expense caused directly of indirectly, in whole or in part by "osmosis, blistering, fiberglass or suface coat blistering, electrolysis, rust, corrosion or oxidation, marine life, marine borers, moth or vermin, rot, fungus, mold or infestation, warping or shrinkage, change of temperature or humidity, deterioration, lack of maintenance, wear and tear, inherent vice." *See id.*

33. The Policy is subject to various conditions precedent to coverage, including a requirement of "due diligence" which provides that "[i]t shall be the duty of every insured person to exercise due diligence to maintain all insured property in good condition and repair and in seaworthy condition." *See id.*

34. The Policy is subject to various conditions subsequent, including certain "duties after a loss" which require the insured to "[g]ive prompt notice" of any incident that may result in a claim, to "[p]rotect the property from further damage", to "[k]eep an accurate record of all repair expenses and provide us with bills, receipts and related documents", to "[a]llow inspection and testing of the damaged property", to "[p]rovide us with records and documents we request", and to "[s]ubmit to separate examination under oath". *See id.*

35. Pursuant to federal admiralty and maritime law, the claimed partial sinking of a vessel at its dock in calm water is presumed to have resulted from its unseaworthy condition.

36. Upon information and belief, the claimed partial sinking of the Yacht at its dock resulted from Inganamort's failure to maintain the Yacht in good condition and repair and in seaworthy condition, and is therefore not covered by the Policy.

37. Upon information and belief, Capt. Larosiere was not employed as a full-time paid captain of the Yacht as required by the Policy, and no money was paid by Inganamort to Capt. Larosiere during 2011.

38. Further, upon information and belief, Inganamort and/or their agents reported that Capt. Larosiere had inspected the Yacht the day before the claimed September 15, 2011 loss and found the yacht to be in good condition, and also that alleged September 15, 2011 loss resulted from severe weather conditions where the Yacht was docked.  Chartis' investigation, however, indicates that weather data pertaining to the area depicted no significant precipitation between September 14, 2011, when Capt. Larosiere reportedly last found the Yacht to be in good condition, and the September 15, 2011 loss.

39. Moreover, since the alleged September 15, 2011 loss, Inganamort has repeatedly and continuously failed, refused and/or delayed in cooperating with Chartis' investigation,

7

including without limitation, by refusing to provide requested records and documents, by delaying in submitting to EUOs, and by delaying in permitting inspections and testing of the Yacht.

40. Accordingly, coverage for the alleged September 15, 2011 loss is barred and/or limited by various terms, conditions and/or exclusions of the Policy, including without limitation for one or more of the following reasons:

(a) Coverage is barred to the extent that the subject loss does not involve physical loss or damage to the insureds' yacht within the meaning of the Policy;

(b) Coverage is barred to the extent that the subject loss was non-fortuitous;

(c) Coverage is barred to the extent that any of the alleged physical loss or damage to the Yacht did not occur during the Policy period;

(d) Coverage is barred to the extent that Inganamort failed to comply with any warranty, including without limitation the warranty that the yacht will always be under the care and control of an approved full-time paid Captain, as required by the Policy;

(e) Coverage is barred to the extent that the subject loss is subject to any exclusions, including without limitation the exclusions for gradual or sudden loss, latent defect, manufacturing and design defects, and/or loss of use or value, contained in the Policy;

(f) Coverage is barred to the extent the insureds failed to comply with all conditions precedent, including without limitation the due diligence condition, which requires the insured to maintain all insured property in good condition and repair and in seaworthy condition, contained in the Policy;

(g) Coverage is barred to the extent that the insured failed to comply with all conditions subsequent, including without limitation compliance with the post-loss notice and cooperation requirements, contained in the Policy;

(h) Coverage is barred to the extent that any loss, damage, claim or expense resulted from any act or omission reasonably expected to cause physical loss or damage, within the meaning of the Policy;

(i) Coverage is barred to the extent that any loss, damage, claim or expense resulted while the Yacht was being used for other than private pleasure purposes;

(j) Coverage is barred to to the extent that the Yacht was sold, transferred to a new owner, or the controlling interest in the owning legal entity has changed;

(k) Coverage is barred to the extent that other insurance may apply to the subject loss;

(l) Coverage is barred to the extent that any information provided to Chartis is incomplete or inaccurate or if any material information has been withheld either at the time of applying for the Policy, during the policy period, before or after a loss;

(m) Coverage is barred to the extent that the insureds failed to mitigate and/or to protect the property from further damage after the subject loss;

(n) The subject loss has not been presented with sufficient particularity so as to make Chartis aware of all policy terms, conditions, provisions, warranties, exclusions or other defenses which are or may become available so as to bar or limit coverage.  Chartis accordingly reserves the right to amend this Complaint and/or assert all applicable defenses if and when additional information becomes available.

2732996-02

41. Chartis therefore seeks a judicial determination from this Court declaring whether and to what extent it has an obligation to provide insurance coverage to Inganamort in connection with the alleged September 15, 2011 loss under the Policy.

## COUNT TWO

## MATERIAL MISREPRESENTATIONS / RESCISSION

42. Chartis repeats and realleges each of the allegations contained in Paragraphs 1 through 41, including any and all subparts, as though fully set forth herein.

43. Pursuant to federal maritime law, the doctrine of *uberrimae fidei* imposes a duty of the utmost good faith which requires an insured to disclose to an insurer all facts and information material to a marine insurance policy.

44. Likewise, the Policy expressly provides that "[t]his contract of insurance is void if any information provided to us is incomplete or inaccurate or if any material information has been withheld either at the time of applying for this policy, during the Policy Period, before or after a loss." *See* Policy, Exhibit A.

45. Additionally, the Policy provides that "[i]f the yacht is sold, transferred to a new owner, or the controlling interest in the owning legal entity is changed, this insurance will be void and of no further force and effect and cancelled from the time of such sale, transfer or change of ownership." *See id*. The Policy further provides that "[n]o change or modification of this policy shall be effective except when made by written endorsement signed by our legal representative." *See id*.

46. Upon information and belief, Inganamort represented to Chartis prior to the issuance of the Policy that Capt. Larosiere was employed as the full-time paid Captain of the Yacht.

47. Upon information and belief, Capt. Larosiere was not employed as a full-time paid Captain of the Yacht and no money was paid by Inganamort to Capt. Larosiere during 2011.

48. Upon information and belief, Inganamort represented to Chartis prior to the issuance of the Policy that they were the owners of the Yacht.

49. Upon information and belief, the Yacht is not owned by Inganamort, but rather by a separate corporation.

50. Upon information and belief, Inganamort did not disclose to Chartis prior to the issuance of the Policy that the Yacht was not in regular use, while in fact, Inganamort had not been aboard the Yacht for several years prior to the subject loss, the Yacht has been intermittedly offered for sale since 1999, and the Yacht has not been operating, nor was intended to operate on any voyages, other than for the purposes of demonstrating the yacht for sale.

51. The revelations that the Yacht did not have a full-time paid Captain as required by the Policy, was not owned by Inganamort, and/or had not been in regular use for years, were material to the acceptance of the risk and the hazards assumed by Chartis. Had Chartis been made aware of this information at the time of quoting or issuing the Policy, Chartis would not have issued the Policy on the same terms, conditions, or premium. As a result of these misrepresentations, omissions, concealment of facts and/or incorrect statements, the Policy is void by its terms and/or should be rescinded.

52. Moreover, upon information and belief, the Policy is void inasmuch as Inganamort and/or their agents have made post-loss material misrepresentations, omissions, concealment of facts and/or incorrect statements, including with respect to the weather conditions which allegedly preceeded the subject loss.

2732996-02

53. Chartis is prepared to tender the premium it received for the Policy to the Court at the proper time.

## COUNT THREE

### RESERVATION TO ASSERT ADDITIONAL GROUNDS FOR DECLARATORY JUDGMENT, MISREPRESENTATION AND/OR RESCISSION

54. Chartis repeats and realleges each of the allegations contained in Paragraphs 1 through 53, including any and all subparts, as through fully set forth herein.

55. Chartis' investigation with respect to potential coverage under the Policy is still ongoing.

56. Chartis brings this action for a declaration of its rights and obligations under the Policy and/or for rescission of the Policy in order to promptly address the issues set forth herein.

57. Additional independent grounds may be available to support rescission or a declaration that coverage is barred and/or limited with respect to the alleged September 15, 2011 loss. By not specifically raising any such limitations or exclusions at this time, Chartis expressly does not waive any of its rights under the Policy and/or at law. To the contrary, Chartis' investigation is ongoing, and it continues to fully reserve all of its rights under the Policy and/or at law, and specifically reserves all of its rights to amend this Complaint to assert additional grounds to support rescission and/or a declaration that coverage is barred and/or limited with respect to the subject loss.

### PRAYER FOR RELIEF

WHEREFORE, Chartis respectfully requests that the Court enter judgment against Inganamort and in its favor as follows:

a. Declare the rights and obligations of the parties, and specifically enter a judgment declaring that Chartis owes no coverage for the subject September 15, 2011 loss;

2732996-02

b. Rescind the Policy due to misrepresentations, omissions, concealment of facts and incorrect statements material to the hazard assumed by Chartis;

c. Award Chartis reasonable attorneys' fees and costs of suit; and

d. Award such other or additional relief as this Court deems just, equitable and proper.

CONNELL FOLEY LLP

Dated:  July 2, 2012

*s/Jonathan P. McHenry*_____
Jonathan P. McHenry
Neil V. Mody
85 Livingston Avenue
Roseland, New Jersey 07068
Tel:    (973) 535-0500
Fax:   (973) 535-9217

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, I am not aware that the matter in controversy is the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, other than John Inganamort's filing of an administrative Civil Remedy Notice No. 2030257 against Chartis with the Florida Department of Financial Services.  Chartis filed its response to this Notice and specifically asserted that the Policy was issued in a state other than Florida and delivered to Inganamort in New Jersey.  Accordingly, it is Chartis' position that Florida law and the provisions under which John Inganamort filed the Civil Remedy Notice are inapplicable to any disputes arising in connection with the claim asserted by Inganamort under the Policy.

Dated: July 2, 2012

*s/Jonathan P. McHenry*_____
Jonathan P. McHenry

2732996-02

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration pursuant to Local Civil Rule 201.1 as equitable relief has been requested.


Dated: July 2, 2012                   *s/Jonathan P. McHenry*_____
                                           Jonathan P. McHenry

2732996-02