NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

CHARTIS PROPERTY CASUALTY COMPANY,

    Plaintiff,

v.

JOHN INGANAMORT and JOAN INGANAMORT,

    Defendants.

OPINION

Civ. No. 12-04075 (WHW)(CLW)

---

**Walls, Senior District Judge**

This matter involves whether damage incurred by Defendants' boat is insured by Plaintiff. Currently before the Court are cross motions for summary judgment under Fed. R. Civ. P. 56. Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motion is dismissed. Plaintiff's motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

A full factual detailing of this matter is provided in the Court's December 19, 2012 opinion denying Defendants' motion to dismiss. ECF No. 21. Immediately relevant to this motion: Plaintiff Chartis Property Casualty Company ("Chartis") issued Private Client Group Yacht policy number PM 134-13-12, effective May 16, 2011 to May 16, 2012 (the "Policy") to John and Joan Inganamort ("the Inganamorts" or "Defendants"). The Policy insured Defendants' 65-foot, 1996 Sportfish vessel, *Three Times A Lady*, which was berthed in Boca Raton, Florida. On September 15, 2011, the Inganamorts' yacht suffered a partial sinking while docked in Florida. Statement of Undisputed Material Facts ("SUMF") (ECF No. 88-2) ¶ 2. Defendants have since moved back the date of the boat's sinking to either September 5 or 6. *Id.* ¶ 15.

1

Plaintiff was informed of the loss on October 14, 2011 by Defendants' insurance broker. *Id.* ¶ 3. The issue at the heart of this matter is: what caused a boat to partially sink? Plaintiff claims it was a hole in Defendants' boat brought about by years of lack of upkeep. *See* ECF No. 88-1 ("Pls. Sum. J. Br.") at 6-7. Defendants claim "heavy rainstorms" overwhelmed the vessel, causing it to sink. *See* ECF No. 90 ("Defs. Sum. J. Br.") at 1.

On July 2, 2012, Chartis filed this action against Defendants in the District of New Jersey. ECF No. 1. Through its summary judgment motion, Chartis seeks declaratory judgment that insurance coverage for the alleged loss is barred and/or limited (Count I); voidance and/or rescission of the Policy based on material representations (Count II); and the right to assert additional grounds for declaratory relief, misrepresentation and/or rescission of the Policy (Count III). *Id.* Defendants meanwhile seek summary judgment dismissing Chartis's complaint. *See* Defs. Sum. J. Br. at V.

## JURISDICTION

The Court has admiralty jurisdiction over this case pursuant to 28 U.S.C. § 1333. This Court also has jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure governing admiralty and maritime claims.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant

substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**Plaintiff's Motion**

### SUMF

The Court first reviews Plaintiff's motion. Defendants failed to file the required response to Chartis's Statement of Undisputed Material Facts, which Chartis filed appropriately. *See* ECF No. 88-2. Local Rule 56.1 states that "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Local Rule 56.1 contemplates this situation: "any material fact not disputed

shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Because of Defendants' failure to follow the rules, "[Chartis]'s Statement of Undisputed Material Facts will be taken as undisputed for purposes of resolving the present motion." *Jovic v. Legal Sea Foods, LLC*, No. 216CV01586, 2018 WL 5077900, at *1 (D.N.J. Oct. 18, 2018). *See also Breitman v. Nat'l Sur. Corp.*, No. CV 14-7843, 2018 WL 1542151, at *6 (D.N.J. Mar. 29, 2018) ("The consequence of Plaintiff's unexplained failure to follow the clear command of L. Civ. R. 56.1(a) by filing a responsive statement of material facts…is that the Court will accept Defendant's facts as established").

Fortuitous Loss

Chartis argues that the insurance policy at hand does not cover the damage sustained by Defendants' boat because it is an "all-risk" policy that only covers losses that the policyholders can prove were "fortuitous." Pls. Sum. J. Br. at 4-7. Defendants contend that federal law is inapplicable, and that under Florida law, "since the burden of investigation [of the accident] is on Chartis, it must likewise bear the burden of proof that there is an exception to coverage." ECF No. 94 ("Defs. Resp. Br.") at 6. The Court must first decide what law to apply to determine which party holds the initial burden.

Federal admiralty law controls. "Marine insurance has always occupied a unique place in the legal universe, straddling federal and state regulatory jurisdiction." *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645 (9th Cir. 2008). In *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 311 (1955), the Supreme Court expounded on conflict of law issues in maritime insurance contracts, holding that "while state law cannot override federal statutory or common law admiralty rules, in the absence of an established federal maritime rule, state law controls." *Certain Underwriters*, 518 F.3d at 645. Accordingly, "maritime contracts are

governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies." *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009). The Third Circuit has admittedly "not evaluated how to determine when a rule is 'judicially established' so as to be the rule of decision," but has indicated it agrees with the standard as "entrenched." *See AGF Marine Aviation*, 544 F.3d at 263 (concluding that "the doctrine of *uberrimae fidei* [("utmost good faith")] is well entrenched and therefore controls this dispute"). The question is whether the fortuitous loss rule is an entrenched federal rule, meaning federal law applies.

It is. The fortuity rule states that "all-risk policies in marine insurance contracts only cover losses caused by fortuitous events."[1] *Youell v. Exxon Corp.*, 48 F.3d 105, 110 (2d Cir.), *cert. granted, judgment vacated on other grounds*, 516 U.S. 801 (1995). All-risk insurance policies are common in many industries. *See, e.g., Fry v. Phoenix Ins. Co.*, 54 F. Supp. 3d 354, 365 (E.D. Pa. 2014) (finding in the home insurance context that under "Pennsylvania law…there is an implied exclusion in every all-risk insurance policy for losses that are not fortuitous"). "Federal courts sitting in admiralty have been applying some variation of the fortuity rule in marine insurance cases for over a hundred years" and "[i]n so doing, these courts have predominantly looked to federal law as precedent." *Youell*, 48 F.3d at 110. Under the rule, "[a] loss is not fortuitous if it results from an inherent defect, ordinary wear and tear, or the insured's intentional misconduct… On the other hand, losses that arise from acts of nature or the insured's

---

[1] The parties do not argue over whether the Policy is an all-risk contract, and the Court finds that it is. "[A] typical 'all-risk' policy, by its terms, states that it covers any kind of loss from any external cause as long as it is not specifically excluded." *Doherty v. Allstate Indem. Co.*, No. CV 15-05165, 2017 WL 1283942, at *14 (E.D. Pa. Apr. 6, 2017), *aff'd*, 734 F. App'x 817 (3d Cir. 2018). The Policy does. *See* ECF No. 88-6 at Parts I and III.

negligence are covered." *Fed. Ins. Co. v. PGG Realty, LLC*, 538 F. Supp. 2d 680, 699 (S.D.N.Y. 2008), *aff'd sub nom.*, 340 F. App'x 5 (2d Cir. 2009). Federal maritime law applies.

## Burden of Proof

In admiralty law, "[t]he burden of proof generally is on the insured to show that a loss arose from a covered peril." *Nw. Mut. Life Ins. Co. v. Linard*, 498 F.2d 556 (2d Cir. 1974). *See also Essex Ins. Co. v. Detroit Bulk Storage*, No. 11-13277, 2014 WL 3687032, at *13 (E.D. Mich. July 23, 2014) ("[T]he burden is on the insured to show that the policy covered the damage suffered"). Defendants argue that even if the fortuity rule is established admiralty law, the Court is better suited following state law, such as New Jersey, where the insurance carrier is obligated to show why a policy exception has been met. Defs. Resp. Br. at 5. But because federal maritime law controls, Defendants hold the initial burden. *See Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania*, No. 11-21163-CIV, 2012 WL 12862812, at *1 (S.D. Fla. Nov. 29, 2012) ("P[olicyholders] concede, as they must, their burden of demonstrating that a fortuitous loss occurred"); *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 892 (M.D. Fla. 1996) ("In an action under an all risks policy, the insured has typically been required to show that the loss or damage was fortuitous"); *LaMadrid v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 567 F. App'x 695, 700 (11th Cir. 2014) ("In order to recover under an all-risk policy of marine insurance, the insured must first 'show that a loss arose from a covered peril'"). Defendants, "the insured, ha[ve] the initial burden of proving a loss by showing [a fortuitous loss.] The burden then shift[s] to Insurer, to show exception to coverage." *Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982). The question becomes whether Defendants can meet their burden by showing their yacht was damaged via fortuitous circumstances.

The "burden of demonstrating fortuity is not a particularly onerous one." *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 77 (3d Cir. 1989). "[C]ourts have held that heavy rainfall is a fortuitous event for purposes of recovery under an all-risk policy." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, No. CIV.97-2185, 2002 WL 31185884, at *8 (D. Minn. Sept. 27, 2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004). Defendants contend that the partial sinking of their boat stemmed from heavy rainfall, and cite two reports written by their expert, Charles M. Stephens, a Marine Surveyor and Licensed Insurance Adjustor. These reports do not state a clear case for rainfall as a cause for the partial flooding. Mr. Stephens' first report states: "The partial flooding of the engine room was caused by heavy rains...It had been reported in September [2011] that two (2) or possible three (3) coastal events of heavy rains, lightning, and heavy thunderstorms did drench South Florida with 5" to up to 15" of rain." ECF No. 90-1 ("Stephens Report I") at 1-2. Mr. Stephens first claimed that this event lead to "copious amounts of rainwater [being] directed to the port and starboard side deck areas," which would normally "drain water to the bilges," but were not able to do their job because the "electrical circuit breaker [was] shorted out by the excessive accumulation of rain water." *Id.* Basically, Mr. Stephens believed a circuit shortage cut power to the bilge pumps (which are tasked with removing excess water on a boat), resulting in the flooding.

Mr. Stephens then amended his hypothesis in his second report, this time contending that circuit failure was simply "collateral damage" that "was not a cause of the flooding, but rather an aftereffect." ECF No. 88-5 at Ex. G. ("Stephens Report II"). According to Mr. Stephens, "the proximate cause [of the partial flooding] was heavy rainfall...[R]ainwater [] accumulate[d] rapidly in the aft portion of the bilge. This water overtook the aft bilge pumps as the stern began to sit lower in the water." *Id.* But if a circuit break did not cause the aft bilge pumps to

7

malfunction, does it make sense that rainwater, which the bilge pumps are designed to flush out, would have? Mr. Stephens does not seem sure himself. He blames Dave Morris, Plaintiff's expert, saying that "because Mr. Morris failed to take timely steps to determine the reasons for the failure, it is impossible to state a cause." *Id.* He finally surmises that if not excessive rain, the partial flooding could have been caused by either (1) a lightning strike that caused a circuit break (*see* Stephens Report I at 1-2) or (2) latent defects in the aft bilge pumps (*see* Stephens Report II at 9-10).

Defendants' theory for the boat's sinking requires them to put forward evidence of heavy rain in the area during the applicable time period. Mr. Stephens stated that there were "5 to 15 inches of rain" in South Florida in September of 2011 based on "talking to other people," including "people at the marina" and "the captain." Pls. Sum. J. Br. at 24. The only other evidence that the Inganamorts have for the rainfall is the testimony of an Officer Currie, who is employed by the Royal Palm Improvement Association (the Inganamorts' homeowners' association). Officer Currie recalled that around September 6, 2011,[2] there "had been heavy rains in the Palm Beach County Area." *See* ECF No. 90-1.

Chartis argues that heavy rain could not have been the proximate cause of the yacht's partial sinking. Plaintiff relies on an expert report prepared by Steven Roberts, a Certified Meteorologist of the Forensic Services Division of CompuWeather, a weather forecasting firm. *See* ECF No. 88-6 at Ex. Q ("Roberts Report"). Roberts sought to determine the amount of rainfall on five dates during September and October 2011 that could have been one of the days the boat partially sank.[3] *Id.* at 3. His analysis showed that rainfall occurred on three of the five dates, with the most rainfall occurring on September 12, 2011, at 1.21 inches. *Id.* at 5. According

---

[2] Office Currie said it was possibly "the night before" September 6, but generally "[a]round that time." *Id.*
[3] The vessel partially submerged on more than one occasion in the fall of 2011. SUMF ¶ 13.

8

to the report, this amount of rainfall happens "multiple times per year, and has a 100 percent chance of being equaled or exceeded in a given year." *Id.* From September 4 through September 6 of 2011, 3.28 total inches of rain fell. *Id.* at 10. Likewise, no other boats in the marina where the vessel was docked were found to have been damaged by any heavy rainfalls during the same time period. Pls. Sum. J. Br. at 24. The ultimate question is: does enough evidence exist for a rational juror to find that the amount of rainfall was sufficiently fortuitous to have caused the partial sinking of the boat?

The Court finds that there is not. Although SUMF ¶ 18 states that the "weather data in the record confirms that there was no extraordinary rainfall," an SUMF is taken only for its factual substance and not its legal arguments. *See* Local Rule 56.1 (stating a statement of undisputed material fact "shall not contain legal argument or conclusions of law"). While the Court takes as undisputed the weather data as reported in the SUMF, whether the rainfall indicated in the data is "extraordinary" for purposes of this motion is a legal question. 'Heavy rainfall' is a term that requires context to determine if the rainfall was sufficiently heavy so as to be 'fortuitous.' For a rainfall to be "heavy" in south Florida such that it would implicate the 'fortuitous loss' rule, there must be sufficient evidence, likely from either meteorological data or publicly available reports, as to the rain's severity. Defendants present no such evidence from which a fact-finder could find that rainfall caused the yacht to sink. It follows then that Defendants have not met their initial burden.

Plaintiff does not contest there was rainfall around September 5-6. *See* SUMF ¶¶ 19-20. But according to the rebuttal report of Plaintiff's expert S.C. Herbert, the amount of rainfall needed "to overrun functional bilge pumps aboard this 65' yacht" would be "extraordinary." *See* ECF No. 95-7 ("Herbert Rebuttal") at 2. Mr. Herbert goes on to state that in order for Mr.

Stephens to be correct, the "rainfall would have [had] to produce a condition under which rain water was entering the vessel at a <u>rate significantly in excess of 4,160 gallons per hour</u>…for a significant duration of time in order to cause the partial submersion of the vessel." *Id.* at 3 (emphasis in original). As was stated by Plaintiff's expert Mr. Morris, "[r]ainfall alone is no cause for the boat to partially submerge. The boat is intended to prevent rain water falling on the deck from entering the bilges." ECF No. 95-9 ("Morris Report") at 5. So even if there was rain, Defendants cannot meet their burden of showing a rainfall that was of a fortuitous nature. "What is covered is not any loss that may happen on the sea, but fortuitous losses occurring through *extraordinary action of the elements at sea*, or any accident or mishap in navigation." Grant Gilmore, Charles L. Black Jr., *The Law of Admiralty* § 2–9, at 72 (2d ed. 1975) (emphasis added). *See also Axis Reinsurance Co. v. Henley*, No. 4:08CV168-WCS, 2009 WL 3416248, at *15 (N.D. Fla. Oct. 22, 2009) (finding that "[t]his loss was not a fortuitous loss. The water did not enter the vessel by waves over the sides").

Defendants finally argue that there are serious issues with Plaintiff's theory as to why the boat sunk, *i.e.* that a lack of upkeep led to a hole in the boat which caused it to flood. *See generally* ECF No. 95; *see also* SUMF ¶¶ 6-7. "Although Defendant's expert might not (now or at trial) be able to provide an opinion as to the cause of the damage, this does not mean that [the policyholders] are somehow excused from meeting their burden to prove that the loss was a fortuitous one." *Miami Yacht Charters*, 2012 WL 12862812 at *3 (granting summary judgment to insurance carrier because policyholders "failed to meet their threshold burden of proving a fortuitous loss"). Even if Chartis's alternative theory as to how the boat partially sunk were not sound, it is irrelevant if the burden of persuasion is never shifted to them, as is the case here. Defendants have failed to meet their initial burden, and therefore are not entitled to coverage

**NOT FOR PUBLICATION**

under the terms of the maritime contract. Because the Court grants Plaintiff's motion for summary judgment, Defendants' motion, which deals with the same legal issues but seeks the opposite relief, is denied. *See Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, No. CV-11-00150-PHX-JAT, 2014 WL 4371284, at *11 (D. Ariz. Sept. 4, 2014), *aff'd*, 670 F. App'x 956 (9th Cir. 2016); *see also Shen Wei (USA) Inc. v. Sempermed USA, Inc.*, No. 05 C 6004, 2009 WL 674364, at *20 (N.D. Ill. Mar. 12, 2009) ("Because the Court grants defendant's motion for summary judgment, plaintiffs' cross-motion for summary judgment is necessarily denied").

## CONCLUSION

Defendants have no evidence to demonstrate a fortuitous loss, and Plaintiff is therefore entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is granted. Defendants' cross-motion for summary judgment is denied. An appropriate order follows.

DATE: 30 March 2019

William H. Walls
Senior United States District Court Judge